428

■ "Its reliance on *Sotrana-Texas Corp. v. Mogen,* 551 F.Supp. 433 (D.N.D. 1983), for the proposition that a judgment for the advisability or necessity of pooling must be grounded on the basis of geological data, is also misplaced and in error. In that case this basic requirement was that of the governmental authority involved by virtue of a lease provision mandating governmental approval, and was not otherwise a requirement without which a conservation purpose could not be found. Our law does not provide that geological data is the sine qua non of establishing a conservation purpose. It does not follow that absent geological data to indicate the existence of a pool of either oil or gas, the only purpose for pooling here was for the purpose of preventing expiration of the leases by starting to drill on one tract.

■ "The trial court also erred when it held that the permit issued to commence drilling was ineffective because KRS 353.570(3) is unconstitutional because it is impermissibly vague and uncertain, and not subject to an objective interpretation. First, it is not vague or uncertain. It simply provides that 'the department may authorize the commencement of the drilling ... of any well prior to the issuance of a permit therefor....' Obviously, if for some reason a permit is not issued thereafter pursuant to paragraphs (1) and (2) of the statute, the authority can be withdrawn. Second, since the attorney general was not notified of this statutory constitutional attack, it can't be raised. CR 24.03.

■ "Finally, we disagree with the trial court in holding that the authorization to commence drilling pursuant to the provisions of KRS 353.570(3) was otherwise invalid for the reason it was arbitrarily granted. We have already considered the question of lack of geological data as not being conclusive as to lack of a conservation purpose. We are not persuaded by the record that the authorization to commence drilling was either arbitrary or contravened either the statutory or lease requirement of conservation."

The decision of the Court of Appeals is affirmed.

AKER, GANT, STEPHENSON, VANCE and WINTERSHEIMER, JJ., concur.

STEPHENS, C.J., dissents and files a separate dissenting opinion in which LEIBSON, J., joins.

STEPHENS, Chief Justice, dissenting.

I respectfully dissent. The trial court made a factual determination that the pooling arrangement was begun solely to prevent ROGPEX's leases from expiring. The lease agreements provided for pooling only for the purpose of promoting the conservation of oil and gas or other minerals. Thus, the trial court's finding that ROGPEX was using the pooling option for an invalid purpose, i.e., to extend all the leases, should be upheld.

The pooling was begun a mere three days prior to the leases' date of expiration. Roger's, the holder of the leases, testified that the purpose of the pooling was to be able to continually go back and drill. He failed to mention conservation.

Because this is an issue of fact, and not of law, the trial court's findings should be dispositive.

LEIBSON, J., joins in this dissent.

**Georgia CORDIER, Movant,**

v.

**LINCOLN COUNTY NATIONAL BANK, Harold Cordier, and Farmers Elevators, Inc., Wholesale Outlet, Respondents.**

Supreme Court of Kentucky.

Jan. 16, 1986.

Georgia Cordier. The circuit court and the Court of Appeals held they were sufficient. We disagree and reverse. As stated in a recent opinion, it is an abuse of discretion for a trial court to enter a default judgment based on an unanswered complaint which fails to state a claim upon which relief can be granted. *Morgan v. O'Neil,* Ky., 652 S.W.2d 83 (1983).

On February 4, 1982 Movant Georgia Cordier filed a petition for dissolution of her marriage to Harold Cordier. In the petition she alleged, among other things, that her husband had abandoned his business, C & H Farm Center, and had not provided for the payment of his business' debts. Movant requested the court's protection of her interests. The matter was then assigned for hearing to the Domestic Relations Commissioner.

Lincoln County National Bank (hereinafter Bank) moved to intervene in Movant's suit for divorce on March 18, 1982, claiming that Movant owed $136,884.49 plus interest on a promissory note executed by her husband on behalf of C & H Farm Center.

Two days before the circuit court ruled on the Bank's motion to intervene, the Domestic Relations Commissioner recommended that the Bank be given control of C & H Farm Center's assets for liquidation in a commercially reasonable manner and report to the court and parties on the proceeds. The court accepted this recommendation and also entered an order allowing the Bank to become an intervening complainant.

The Intervening Complaint, filed on April 17, 1982, alleged:

"2. That Defendants, Harold Cordier and Georgia Cordier, his wife, are the owners and operators of C & H Farm Center which is located on Depot Street in Stanford, Lincoln County, Kentucky.
3. That Defendant Harold Cordier, acting on behalf of C & H Farm Center, on or about October 31, 1981, executed and delivered to the Plaintiff [Bank] a promissory note whereby C & H Farm Center promised to pay to Plaintiff [Bank] the sum of $130,000.00 plus interest on said

Miller, Griffin & Marks, Lexington, Merle C. Clark, Danville, for movant.

Edward G. May, Stanford, James F. Clay, Jr., Danville, Cabell D. Francis, Stanford, for respondents.

STEPHENS, Chief Justice.

The issue in the case at bar is whether the allegations contained in Lincoln County National Bank's complaint were sufficient to support a default judgment against

amount ... a copy of said note being attached hereto...."

In June 1982, upon receiving the recommendation of the Domestic Relations Commissioner, the circuit court entered a decree of dissolution and adopted the agreed property settlement. The agreement allocated the farm and home to Georgia Cordier and the business, the cattle, and the farm machinery to Harold Cordier. The Bank filed an objection to this hearing before the Domestic Relations Commissioner because they received no notice of the hearing which led to the property settlement recommendation.

The Bank also filed a motion for a default judgment against Georgia Cordier and Harold Cordier because neither party had filed an answer to the Intervening Complaint. The circuit court entered a default judgment, finding Georgia Cordier jointly and severally liable on her husband's promissory note. The amount of the judgment was $140,783.83 plus $7,039.19 in attorney's fees. Movant filed timely motions under CR 55.02 and CR 59.05 to set aside and vacate the default judgment. The court overruled these motions. The Court of Appeals affirmed the trial court.

■ In its Intervening Complaint, the Bank asserted no theory of relief sufficient to find Georgia Cordier liable on the promissory note signed only by her husband. As KRS 355.3–401(1) states, "No person is liable on an instrument unless his signature appears thereon."

■ The Bank contends that it was evident from the Intervening Complaint that the business arrangement between Georgia Cordier and Harold Cordier was in the nature of a partnership. However, the complaint merely stated that Georgia was an owner and operator of the Farm Center at the time the complaint was filed. It did not specifically allege that Georgia was a partner of the C & H Farm Center business at the time the note was executed. Joint tenancy, tenancy in common, tenancy by the entirety, joint property, common property, or part ownership does not of itself establish a partnership. KRS 362.180(2).

The Bank did not allege agency, estoppel or any other theory by which it could hold Georgia responsible for her husband's business debts. Georgia was merely an employee of the business.

We find the recent case of *Morgan v. O'Neil, supra,* to be dispositive of the case at hand. There, a couple sought to enforce a judgment obtained in Indiana against a Kentucky corporation. The couple amended the complaint to join the Corporation's sole shareholder alleging that he was personally liable on the judgment. When the defendant did not answer the amended complaint, a default judgment was entered. The defendant argued that the amended complaint failed to state a cause of action because it made no allegation that defendant was an officer of the corporation. The complaint only alleged that defendant was a shareholder and shareholders are not liable for corporate debts unless an extraordinary circumstance exists. We stated there that, though

"[M]uch leniency should be shown in construing whether a complaint on which a default judgment is based states a cause of action, this Court cannot read away the requirement of Civil Rule 8.01 which requires '... a short and plain statement of the claim showing that the pleader is entitled to relief....' There must be maintained some minimum standard in the art of pleading which must be met. 652 S.W.2d at 85."

The Bank argues that this Court's opinion in *Crowder v. American Mutual Liability Insurance Company,* Ky., 379 S.W.2d 236 (1964), should be controlling. However in that case we specifically determined that the default judgment was adequately supported by the allegations in the complaint.

■ In the case at hand, we hold that a complaint which alleges no theory of personal liability against a spouse for a promissory note executed by her husband is insufficient as a matter of law and cannot support a default judgment. The trial

court abused its discretion in refusing to set aside and vacate the default judgment. We reverse and remand to the trial court for proceedings consistent with this decision.

All concur.

**COMMONWEALTH of Kentucky, Movant,**

v.

**Waldon L. HAGER, Respondent.**

Supreme Court of Kentucky.

Jan. 16, 1986.

David L. Armstrong, Atty. Gen., Sarah M. Jackson, Asst. Atty. Gen., Frankfort, for movant.

David VanHorn, Lexington, for respondent.

STEPHENSON, Justice.

Waldon L. Hager was convicted in district court for the offense of operating a motor vehicle while under the influence of intoxicants. KRS 189.520. On appeal, the circuit court reversed for a new trial. The Court of Appeals affirmed. We granted discretionary review and reverse the decision of the Court of Appeals and the circuit court.

Hager was stopped by a police officer for failure to stop at a "3-way stop" intersection. The officer testified he smelled alcohol on Hager's breath and administered three field sobriety tests, all of which were failed by Hager. He refused to take a breathalyzer test.

The Commonwealth, at trial, was permitted to introduce in evidence before the jury that Hager refused to submit to the breathalyzer test. Hager was convicted and appealed to the circuit court, asserting error in permitting the Commonwealth to put before the jury testimony that he refused a breathalyzer test. The circuit court reversed for a new trial, and the Court of Appeals affirmed in both instances, making a determination that the district court erred in permitting the jury to hear the testimony of such refusal on the part of Hager.

We are reversing these decisions but do not fault the circuit court or the Court of Appeals for their decisions. Each decision conformed with established law in this Commonwealth.