Daniel E. BAILEY, Jr.
(M.D.), Appellant

v.

Honorable Allan Ray BERTRAM,
Judge, Marion Circuit Court,
Division II, Appellee

and

Joseph Paul Spalding; Joyce Spalding;
Karen Jones; and Timothy, Jones
Intervening Parties

2013–SC–000386–MR

Supreme Court of Kentucky.

RENDERED: MAY 14, 2015

CORRECTED: JUNE 10, 2015

Counsel for Appellant: John F. Parker, Jr., Patricia Colleen Le Meur, Phillips, Parker, Orberson 86 Arnett, PLC, 716 West Main Street, Suite 300, Louisville, Kentucky 40202

Appellee: Hon. Allan Ray Bertram, Judge, Marion Circuit Court, Division II, 300 E Main Street, Suite 301, Campbellsville, Kentucky 42718

Counsel for Intervening Parties: Joseph Hubert Mattingly, III, Kaelin Goheen Reed, Mattingly 86 Nally–Martin, PLLC, Attorneys at Law, 104 West Main Street, PO Box 678, Lebanon, Kentucky 40033, Kandice D. Engle–Gray, PO Box 807, Lebanon, Kentucky 40033

## OPINION OF THE COURT BY JUSTICE NOBLE

In this case, the trial court allowed the Intervening Parties to intervene in a divorce action, even though they had no interest in the marriage or the marital estate. The court did so because the Intervening Parties sought to intervene for the purportedly limited purpose of unsealing records in the court file. The Court of Appeals declined to issue a writ of prohibition to block the intervention and unsealing of the records. Although this Court believes that such intervention was improper, it nevertheless concludes that a writ of prohibition is not available because the Appellant has an adequate remedy by appeal. Accordingly, the Court of Appeals is affirmed.

### I. Background

In 2008, Dr. Daniel Bailey, the Appellant in this case, and his wife, Katherine, began divorce proceedings in Marion Circuit Court. The file apparently included sensitive information, and the trial court ordered that the file be sealed.

In 2010, two of Bailey's former patients and their spouses—Joyce and Joseph Paul Spalding, and Karen and Timothy Jones (collectively, the "Intervening Parties")— filed medical negligence claims against him. Discovery proceeded in those cases for over a year. Then, in August 2011, the Intervening Parties moved to intervene in the Baileys' divorce action, alleging that the sealed records in that case might contain information reflecting Bailey's general state of mind as it might relate to the conduct alleged in the medical negligence suits.

The motion to intervene in the Baileys' divorce action was made solely for the purpose of trying to unseal portions of the divorce record. The Intervening Parties claimed that Bailey's personal lifestyle pri-

or to and during the pendency of his divorce, coupled with general marital discord, may have affected his treatment of the two patients and thus was relevant to claims asserted by the patients and their spouses in their malpractice actions.

The circuit court concluded that "[c]oncerns for privacy in these delicate matters are certainly legitimate but they cannot in this particular case outweigh the presumption that all civil proceedings are open for public review and scrutiny." The court then granted the motion to intervene and ordered the divorce record unsealed. The court, however, postponed the effectiveness of its order for 21 days "unless an appropriate Petition for relief from the Court of Appeals of Kentucky is filed prior thereto."

Bailey quickly filed a petition for a writ of prohibition against the enforcement of the trial court's order. The Court of Appeals concluded that Bailey had no adequate remedy by appeal but nevertheless denied the petition, concluding that the trial court's action in unsealing the records was not erroneous. The Court of Appeals noted that judicial records are presumptively available to the public and that they should be sealed only if the right to access them is outweighed by other interests. The Court of Appeals then opined that Bailey had not shown that the records were protected by a privilege, nor that the records contained the type of confidential or sensitive information, beyond what is typical in any divorce case involving children, that would justify sealing the records.

Bailey now appeals to this Court as a matter of right. *See* CR 76.36(7)(a) ("An appeal may be taken to the Supreme Court as a matter of right from a judgment or final order in any proceeding originating in the Court of Appeals."); Ky.

Const. § 115 ("In all cases, civil and criminal, there shall be allowed as a matter of right at least one appeal to another court....").

## II. Analysis

Before turning to the usual writ analysis, this Court notes its discomfort with the intervention in the underlying divorce action. The information the Intervening Parties sought from the divorce action could have been obtained through discovery in their respective malpractice actions. They were free to submit interrogatories and requests for admission, and to depose Dr. Bailey. Dr. Bailey's state of mind at the time of the alleged malpractice would have been fair game for these tools.

Yet, though the motion to intervene alleged that Bailey's personal lifestyle prior to and during the pendency of his divorce and his general marital discord *may* have contributed to his alleged malpractices, none of the discovery taken in the negligence cases gave any indication that this might be the case. By filing the motion to intervene, the Intervening Parties wanted to extend the already broad scope of discovery allowed within their respective medical malpractice cases to reach the sealed material in Bailey's divorce case— or, in other words, they wanted to go fishing. They had no real interest in intervening as a party to the divorce action, but rather sought to use intervention as a discovery tool.

And that discovery tool was used in a cynical fashion. The assumption behind seeking out the sealed records contained in the divorce action is that Dr. Bailey would not have replied truthfully or fully to discovery requests. While there is no doubt that witnesses and parties sometimes lie, or fail to tell the whole truth, that cannot be the basic assumption of our legal system.

Of course, the Intervening Parties found themselves in an awkward procedural position. The material they wanted to see was sealed in a separate action. And as nonparties to the divorce action, they obviously could not simply appear in the divorce action and ask the judge to unseal the record. Thus, in an effort to reach the sealed material, they asked to intervene as parties in the divorce action. And without making findings of fact relevant to the question of intervention, the circuit judge granted the motion to intervene and, then, ordered the record unsealed.

Civil Rule 24 governs intervention in legal actions. At issue in this case is Rule 24.02,[1] which governs permissible intervention of parties. As stated in the rule, permissive intervention is appropriate "when a statute confers a conditional right to intervene or ... when an applicant's claim or defense and the main action have a question of law or fact in common." CR 24.02. As compared to matter-of-right intervention in Rule 24.01, permissive intervention is more concerned with consolidating common legal and factual questions

---

1. The mandatory intervention rule, Civil Rule 24.01, states that an intervention of right is permitted "when a statute confers an unconditional right to intervene, or ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless that interest is adequately represented by existing parties." That rule might allow, for example, intervention in a divorce action of someone with an interest in property that is part of the marital estate. *Cf. Cordier v. Lincoln County Nat. Bank,* 702 S.W.2d 428 (Ky.1986) (discussing intervention of a bank in a divorce action to protect interest in a promissory note signed by husband). But there is no such claim here, and thus that rule does not apply.

than with protecting the implicated rights of non-parties. *See United States ex rel. Frank M. Sheesley Co. v. St. Paul Fire and Marine Ins. Co*, 239 F.R.D. 404, 414 (W.D.Pa.2006) (construing the analogous federal rule). The purpose of allowing intervention in an action is to prevent an issue from being tried to finality without all parties with a common interest in the issue or factual scenario being present. The rule is intended, at least in part, to reduce the chances of a single set of facts being litigated multiple times.

■ Permissive intervention requires that the intervenor have an interest or claim *in common* with the litigants in the underlying action. Indeed, past precedent demands it. *See Summe & Ratermann Co. v. City of Covington*, 314 S.W.2d 568 (Ky.1958) (holding permissive intervention was improper where the intervening pleading undertook to inject a completely new cause of action involving different issues and parties and asked for affirmative relief on a ground not involved in the original suit). This mandatory commonality of interest is why Civil Rule 24.03 requires the motion to intervene to be accompanied by a pleading setting forth *the claim or defense* for which intervention is sought.

In the present case, none of the Intervening Parties had a claim or a defense in common with any claim or defense in the divorce action. Indeed, they had no interest at all in the claims at issue in the divorce action, being complete strangers to the Baileys' marriage and the marital estate. What the Intervening Parties had was at most a collateral claim to the information that may have been filed in the divorce case and which they believed might be relevant to their unrelated tort claims. But that is insufficient to allow them to intervene in that case, especially where they have the right to engage in discovery under Civil Rules 26 to 37.

The Intervening Parties suggest that the right they sought to assert by intervening was the right of access to the courts embodied by Section 14 of the Kentucky Constitution. But that provision requires only that the "courts shall be open," and that "every person for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." Ky. Const. § 14. The only injuries claimed by the Intervening Parties were the harms they may have suffered as a result of Bailey's alleged malpractice and a collateral right to information related to those harms. They had thus already exercised their Section 14 right by bringing their malpractice claims in court, where, as noted above, they had the full array of discovery tools available to them. The Intervening Parties' expansive reading of Section 14 would allow intervention in any case by any curious person.

The fact that most of this information could no doubt be obtained through a deposition of Bailey only further highlights that there was no reason for the Intervening Parties to intervene in Bailey's divorce action. They had no stake in the divorce proceedings, and could not be proper parties.

Whether the judge was correct in initially sealing the divorce record is not a question that the Intervening Parties have any standing to ask. As noted above, they have no interest in the subjects of the divorce action (the marriage, the custody of children, and the marital estate).

■ The only exception in our law for intervention by someone without an interest in the litigation is for news media attempting to examine court records. News media enjoy a unique exception to the usual rules of standing and interven-

tion. Newspapers and other press outlets have the right to intervene in sealed cases, in some circumstances, because of the freedom of the press granted by the First Amendment and, in criminal cases, the Sixth Amendment. *See Courier–Journal and Louisville Times Co. v. Peers,* 747 S.W.2d 125, 127 (Ky.1988). But these constitutional rights "have placed the news media in a *unique* position in demanding access to court proceedings wherein the media is permitted to intervene and demand access even though a nonparty, and, if denied intervention or refused a hearing, is permitted to attack the decision in the appellate court by writ of prohibition or mandamus." *Id.* (emphasis added). Indeed, the news media's right to access proceedings in this manner is "an exception to the usual rules regarding standing to intervene and standing to seek mandamus where access is denied." *Id.* at 128. Those cases allowing such interventions are squarely grounded on the First Amendment freedom of the press, which simply is not applicable to the Intervening Parties.[2]

Instead, they are private parties litigating a purely private dispute. They are trying to take a simple discovery inquiry and turn it into the right for any curious third party to ask to intervene in an unrelated case. But the right of the Intervening Parties to engage in discovery in their medical negligence cases does not extend to allowing them to become *parties* in the unrelated case.

Simply stated, the right to intervene in a court action is not a discovery tool. To the extent court records are open to the public, the Intervening Parties can look at the files like anyone can. But if a case is confidential by statute, or has been sealed by the court under a statutory or discretionary basis, then they can have no more access than any other member of the public and certainly cannot become parties at will. And they have no right to ask that the matter be unsealed.

At least as it concerns the right to intervene, this case is startlingly simple, and requires only an easy application of this Court's rules and precedent. The Intervening Parties literally had "no business" in Bailey's divorce case.

It must be understood that this case is not about whether the trial court had authority to seal or unseal the records, or whether the court had the power to revisit its earlier order. Indeed, there is little question that under the right circumstances, a court has the authority to do all of these things. Rather, this case is really about the condition precedent to reaching those questions, namely, having a proper party able to ask them. But because the Intervening Parties were not proper parties, having been erroneously allowed to intervene in the divorce action, the question of unsealing the records was not properly before the trial court. And the court did not unseal the records *sua sponte.*

 The more difficult question, however, is whether a writ of prohibition is the appropriate avenue of relief for Bailey. To obtain an extraordinary writ, such as a writ of prohibition, a petitioner is required to meet a high standard. That standard is well known. *See, e.g., Hoskins v. Maricle,* 150 S.W.3d 1 (Ky.2004). At issue here is what is known as the second class of writs, that is, where the "the lower court is act-

---

**2.** There is also a common-law "right" to access court records, but it is not absolute and thus "a trial court has discretionary authority to deny access to its records and files." *Courier–Journal, Inc. v. McDonald–Burkman,* 298 S.W.3d 846, 848 (Ky.2009). That discretionary authority had already been exercised by the trial court in the initial sealing of the records.

ing or is about to act erroneously, although within its jurisdiction." *Id.* at 10. In such cases, a writ of prohibition is available as a remedy only if "there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted." *Id.*

■ The first prong of this test, whether there is an adequate remedy by appeal, is a mandatory inquiry. *Bender v. Eaton,* 343 S.W.2d 799, 801 (Ky. 1961); *Hoskins v. Maricle,* 150 S.W.3d 1, 9 (Ky.2004). It is here that Bailey's claim fails.

The Intervening Parties contend the circuit court's order resolved all issues between them and Bailey, and thus it was a final and appealable judgment under CR 54.02(1), which gave Bailey an adequate remedy by appeal. This Court agrees. To the extent that the Intervening Parties even made a claim on which relief could be granted, the trial court's order resolved it. Thus, it technically falls within the definition of a judgment as contemplated by the Civil Rules. "A judgment is a written order of a court adjudicating a claim or claims in an action or proceeding." CR 54.01. Moreover, the order recited the language from CR 54.02, "there being no just cause for delay," and stated that it was a "final and appealable order." That made the judgment appealable.

Bailey argues that there is no adequate remedy for the disclosure of sensitive information. While that is often true, such as when a privilege will be breached under a discovery order, *e.g., Collins v. Braden,* 384 S.W.3d 154, 158 (Ky.2012), that is not the situation in this case. Unlike in a pure discovery situation, the appellate process provides a sufficient remedy for Bailey to avoid that disclosure in the underlying case.

First, the order by its own language was not to take effect until 21 days after its entry. Even then, it would be stayed if "an appropriate Petition for relief from the Court of Appeals of Kentucky [wa]s filed prior thereto."

Second, this was not an interlocutory discovery order that might require the disclosure of privileged information. As discussed above, this order resolved the Intervening Parties' claim and was therefore a final and appealable order. The Civil Rules include a mechanism for staying a lower court judgment while an appeal is pending: "At any time after a notice of appeal ... has been filed, a party to the appeal or motion may move the appellate court for intermediate relief upon a satisfactory showing that otherwise he will suffer immediate and irreparable injury before a hearing may be had on the motion." CR 76.33(1).

Bailey could have filed a notice of appeal and sought a stay of the trial court's order under this rule. No doubt, the objection will be that such a stay is not guaranteed. But our writ law does not require the lack of a guaranteed remedy by appeal, it requires the lack of an *adequate* remedy. A stay under Civil Rule 76.33 is necessarily an adequate remedy because, if granted, it would stop the disclosure of the information until the appeal was completed. That a stay is not guaranteed does not change this any more than the fact that an appeal is not guaranteed to be successful would mean that an appeal is an inadequate remedy. *See Estate of Cline v. Weddle,* 250 S.W.3d 330, 335 (Ky.2008) ("The fact that the Estate might be required to prosecute an appeal to protect its rights does not establish that it has no adequate remedy by appeal...."). Indeed, if the fact that the appeal might fail were sufficient to meet this requirement for a writ, then all cases would meet it, since no appeal is guaranteed to be successful. Just as the lack of a guaranteed win on appeal is not

sufficient for a writ, so too is the lack of a guaranteed stay.

There has been some suggestion that the trial court's order somehow misled Bailey by specifically stating that it would become effective in 21 days "unless an appropriate *Petition* for relief from the Court of Appeals of Kentucky is filed prior thereto." (Emphasis added.) Although appeals are not pursued by "petitions," the trial court's use of this term does not dictate the process available to Bailey. The same order, as noted above, used the traditional (and rule) language used to signal that the order was ripe for appeal.

### III. Conclusion

If a petitioner "has an adequate remedy by appeal or otherwise, ... the petition should be dismissed forthwith." *Bender v. Eaton*, 343 S.W.2d 799, 801 (Ky.1961). Although the Court of Appeals concluded there was no adequate remedy by appeal, it nevertheless denied the writ, reaching the merits of the claimed error. This Court agrees that the Court of Appeals should have denied the writ, but it does so because Bailey has an adequate remedy by appeal and the remedy of a writ was therefore unavailable to him. For that reason, the judgment of the Court of Appeals is affirmed.

Abramson, Barber, Cunningham and Keller, J.J., concur. Minton, C.J., concurs in result only. Venters, J., concurs in result only by separate opinion.

VENTERS, J. CONCURS IN RESULT ONLY:

I concur with the Majority opinion only insofar as it correctly concludes that Appellant was not entitled to a writ because he had an adequate remedy by way of a conventional appeal. I do not join in the extraneous dicta otherwise contained in the majority opinion because it is not germane to the decision we reach.