# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: MAY 5, 2016
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2015-SC-000477-MR

ROGER STAMPER, AS TRUSTEE OF
THE STAMPER REVOCABLE TRUST                                 APPELLANT

ON APPEAL FROM COURT OF APPEALS
V.                      CASE NO. 2015-CA-000885-OA
GRANT CIRCUIT COURT NO. 07-CI-00050

HONORABLE LINDA RAE BRAMLAGE,
SPECIAL JUDGE, GRANT CIRCUIT COURT                           APPELLEE

AND

MIA STAMPER; AND MICHAEL A. STAMPER        REAL PARTIES IN INTEREST

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

The Appellant, Roger Stamper, owns various items of real property in
trust that he is alleged to have acquired with funds transferred to him by his
son as part of the son's fraud on the marital estate in his divorce action. The
Montgomery Circuit Court has ordered the properties held in constructive trust
for the benefit of the son's wife, and has ordered the judicial sale of the
properties to satisfy a judgment against the son. The court allowed a
supersedeas bond, but one has not been posted. Is the remedy of an appeal,
with a supersedeas bond, an adequate one for Roger so as to bar the
availability of a writ of prohibition barring the judicial sale? We conclude that it
is.

# I. Background

Roger's son, Michael Stamper, was married to Mia Stamper. Michael and Mia began divorce proceedings in 2007. Michael had substantial assets in the form of a trucking company and bank deposits. The trial court ordered the parties not to dispose of or sell any assets while the divorce was pending. Mia alleged that Michael nevertheless fraudulently transferred these assets to his father during the divorce action to avoid their being used in calculating the marital estate.

The details of the alleged transactions are irrelevant here, and are the subject of ongoing appeals at the Court of Appeals. It suffices to note that the assets of the trucking company made their way into Roger's hands, and were then transferred to a pair of companies that he owned. There may also have been a transfer of cash reserves, as Michael's previously seven-figure bank account dropped to zero, and Roger's increased by that amount (and more over time). Additionally, Roger bought nine pieces of real estate in Montgomery County, which were placed into a pair of trusts. The trial court concluded that these transactions and the operation of Roger's trucking companies were actually on behalf of Michael.

Given these allegations, the trial court allowed Roger and his trucking company to be joined in the divorce action. The trusts were never drawn into the action. Roger was never served, however, and he refused to appear or to be deposed.

Based on what happened, the trial court concluded that Michael transferred his business property and income to his father, and that the

transfers were fraudulent and calculated to make Michael judgment proof. The trial court evidently believed parcels of property were bought with funds derived from the transfers, either from income generated by the trucking companies or the bank deposits. As a result of the fraud finding, the court ordered that the property held by Roger, his company, and the trusts be held in constructive trust for Mia's benefit. The court noted that although Roger had never been served, he had constructive notice of the proceedings, and that the court had *in rem* jurisdiction over the property in Kentucky, and quasi *in rem* jurisdiction over Roger and his companies as it relates to the Kentucky property.

Eventually, the trial court entered a divorce decree and divided the marital estate. This included a substantial judgment in Mia's favor for over $700,000 against Michael. The trial court later ordered that the real estate held by Roger in trust, and which was part of Michael's overall allegedly fraudulent scheme, be sold by the master commissioner to satisfy the judgment against Michael. The court set a supersedeas bond of $1,000,000 if Roger wished to postpone the sale while any appeal went forward. He did not post the bond, although he appealed.

This case, however, arises not from that appeal, but from a petition for writ of prohibition to bar the judicial sale. The Court of Appeals denied the petition, concluding that there was an adequate remedy by appeal.

Roger has now appealed to this Court as a matter of right.

## II. Analysis

As we have noted on many occasions, cases in which a writ of prohibition or mandamus is sought proceed in two steps. *Collins v. Braden*, 384 S.W.3d 154, 158 (Ky. 2012). First, the court must look at whether such an extraordinary remedy is even available, before deciding the merits of the claimed legal error. *Id.* Second, if the court finds that the remedy is available, it may then look at the merits of the claimed error. *Id.* In this second step, if the trial court has erred or is about to err, the court may issue the writ. *Id.*

Under the first step, we have acknowledged two classes or categories of writ cases: "one addressing claims that the lower court is proceeding without subject matter jurisdiction and one addressing claims of mere legal error." *Id.* at 158. For both classes of case, "this Court has articulated a strict standard to determine whether the remedy of a writ is available." *Cox v. Braden*, 266 S.W.3d 792, 796 (Ky. 2008). That standard states:

> A writ of prohibition *may* be granted upon a showing (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.

*Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky. 2004).

Roger does not claim entitlement to a writ under the first class, although he claims the trial court never had personal jurisdiction over him, as he was never served, and that this was error. Presumably, he declined to make a claim under this class of writs because this Court has held that the lack of personal

4

jurisdiction is not an adequate basis for a writ. *See Goldstein v. Feeley*, 299 S.W.3d 549 (Ky. 2009).

Instead, Roger claims entitlement under the second class of writs. Under that class, a petitioner must show two prerequisites for availability of the writ, that is, that "there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted." *Hoskins*, 150 S.W.3d at 10. Of the two prerequisites, the first is mandatory, and thus Roger is required to prove that he has no adequate remedy by appeal. *Marcum v. Scorsone*, 457 S.W.3d 710, 716 (Ky. 2015).

Roger claims that he has no adequate remedy by appeal because the properties may be sold before his pending appeals are decided. Roger is correct that even if he wins on appeal, he likely will not be able to unwind any sales that happen in the meantime. Although Roger would likely be able to access any funds realized from such sales if he succeeds on appeal, real property, unlike personal property, is generally considered "unique," and its loss is not considered remediable at law (i.e., by money damages), at least where the law of contracts is concerned.

The fly in this ointment, however, is that the trial court allowed Roger to post a supersedeas bond, which would have stayed any judicial sale while his appeals were decided. He claims this does not make his remedy by appeal adequate because he has so far been unable to post the bond. He also notes that even if he posts the bond, he will suffer irreparable harm absent the writ because of the cost of obtaining the bond.

5

Roger's argument is built on a misunderstanding of the requirement of no adequate remedy by appeal. He essentially complains that because he cannot take advantage of the available remedy—a supersedeas bond—it and any appeal are inadequate. "But our writ law does not require the lack of a *guaranteed* remedy by appeal." *Bailey v. Bertram*, 471 S.W.3d 687, 693 (Ky. 2015) (emphasis added). Instead, "it requires the lack of an *adequate* remedy." *Id.* In fact, we have expressly held that the right to appeal and to seek a stay of a trial court's order is an adequate remedy by appeal. *Id.* And "[t]hat a stay is not guaranteed does not change this any more than the fact that an appeal is not guaranteed to be successful would mean that an appeal is an inadequate remedy." *Id.*

The same reasoning applies to a case in which a losing party is allowed to supersede a judgment. Here, if Roger posts the supersedeas bond, the order to sell the properties would be stayed. And unlike the *possible* stay in *Bertram*, the stay here would be guaranteed on the posting of the bond. This makes the remedy adequate, in the sense that it would protect his rights and stave off any claimed irreparable harm. *Cf. Kindt v. Murphy*, 227 S.W.2d 895, 897 (1950) (holding that remedy by appeal is inadequate in cases where supersedeas is not available, such as contempt).

That Roger may not be able to afford to post the bond does not change that he has an adequate remedy. Almost all private litigation has a cost. That a party may not be able to afford a procedure to vindicate his rights does not show that the procedure is inadequate. *See Estate of Cline v. Weddle*, 250 S.W.3d 330, 335 (Ky. 2008) ("The fact that the Estate might be required to

6

prosecute an appeal to protect its rights does not establish that it has no adequate remedy by appeal, just as we have similarly rejected another party's argument that an appeal could not remedy its having to go to the expense of litigating its case at trial in the first place.").

Moreover, it is not clear that Roger actually cannot afford the bond. As noted above, the trial court found that at least at one time he had access to significant cash deposits. Choosing not to take advantage of a remedy certainly does not make the remedy inadequate. And that the remedy may be expensive again does not change this.

The simple fact is that Roger may pursue (and, indeed, is pursuing) appeals of the underlying orders and judgments, which he may supersede them by posting the appropriate bond. There is never a guarantee that any appellate or other remedy will succeed. All that is required is the availability of the remedy, and the adequacy of the remedy if successful. As we noted in *Bertram*, "if the fact that the appeal might fail were sufficient to meet this requirement for a writ, then all cases would meet it, since no appeal is guaranteed to be successful. Just as the lack of a guaranteed win on appeal is not sufficient for a writ, so too is the lack of a guaranteed stay." *Bailey*, 471 S.W.3d at 693–94. And so too, that the supersedeas process might fail in a given case, whether because the party cannot afford it or does not wish to pay the cost, cannot make the remedy inadequate.

A petition for a writ of prohibition or mandamus is not a substitute for a supersedeas bond, just as it is no substitute for an appeal or other available remedy. But that is exactly what Roger seeks. He wishes to avoid the cost of

7

the supersedeas bond by litigating his complaints in a writ action. That is precisely why we have the requirement that "there exist[] no adequate remedy by appeal *or otherwise*," *Hoskins*, 150 S.W.3d at 10 (emphasis added), before the merits of a writ petition will even be considered.

### III. Conclusion

Because Roger has an adequate remedy by appeal or otherwise, the remedy of a writ is not available to him. His remedy lies in the appeals of the underlying matters, along with any attendant relief, such as by supersedeas. That alone decides this case. The other issues Roger raises go to the merits of the trial court's ordered judicial sale, and we cannot reach them if a writ is unavailable. Those matters must instead be litigated by way of appeal. For the foregoing reasons, the Court of Appeals is affirmed.

All sitting. Minton, C.J.; Cunningham, Hughes, Keller and Noble, JJ., concur. Venters, J., dissents by separate opinion in which Wright, J., joins.

VENTERS, J., DISSENTING: I respectfully dissent. Appellants, The Stamper Revocable Trust and The Roger Stamper Three Daughters Revocable Trust (collectively, "The Trusts") seek writ relief to stop the Grant Circuit Court from selling their lands to pay the personal debt of another individual, Michael Stamper, despite the fact that the Trusts were never named or joined as parties in any action pending before the court and they were never served with process. The majority posits that the Trusts face no irreparable harm because the trial court set a supersedeas bond of $1,000,000.00. The problem with that theory is that the Trusts, whose property is about to be sold, were not parties to the case, have no standing to post a supersedeas bond, and have no

standing to file a notice of appeal from the judgment ordering their land to be sold.

The errors of the trial court are obvious and we have clear precedent authorizing extraordinary injunctive relief in this situation. There is no sound legal principle supporting an order for the judicial sale of real estate owned by non-parties, like the Trusts, especially when they were never even served with process, personally or constructively. The failure of the Court of Appeals to provide equitable relief is a clear abuse of discretion.

### I. Factual Background.

In the final decree arising out of the Michael Stamper/Mia Stamper divorce case, the Grant Circuit Court adjudged Michael Stamper to be indebted to his former wife, Mia Stamper, in the sum of $716,491.00. The decree remains under direct appellate review in the Court of Appeals. I do not question the correctness of the judgment regarding Michael's debt to Mia. The correctness of the judgment is simply immaterial to the issue we consider. Most of the indebtedness was based upon the findings that Michael defrauded Mia by transferring assets from business entities within the marital estate to businesses operated by his father, Roger Stamper, specifically Stamper Trucking, LLC, and R. Stamper Trucking, Inc. Mia joined Roger and the two companies as necessary parties in the divorce case, but *none* of the three newly added parties were ever served with process. Roger entered only a special appearance protesting the lack of service of process and did not otherwise enter an appearance. To be clear, these additional parties do not include the Trusts. No attempt was ever made to join the Trusts or the beneficiaries of the Trusts,

9

and no effort to effect legal service of process upon the Trusts was ever made. Yet, it is the legal interest of the Trusts and the Trusts' beneficiaries that is being extinguished by the judicial sale.

On February 27, 2014, to encourage the payment of Michael's $716,491.00 debt to Mia, the trial court imposed a constructive trust for Mia's benefit upon "all property in the name of . . . Roger Stamper, Stamper Trucking, LLC, and R. Stamper Trucking, Inc. whether individually, with another or by any other name." Thus, *everything* ("*all property*") owned wholly or in part by Roger Stamper, Stamper Trucking, LLC, and R. Stamper Trucking, Inc. was impressed into a constructive trust, to be held to pay Michael's debt to Mia. After further hearings, the trial court found on September 12, 2014 that "Roger Stamper has transferred assets held in constructive trust from the deed holder to 'Roger Stamper Revocable Trust.'"[1] With no other material findings, the court concluded that "[t]he corporate veil has been pierced in regards to these parties and all entities that have been formed by Roger Stamper post 2007."

In an order of October 6, 2014, the trial court held that it was "not holding Roger Stamper and his companies' responsible for [Michael's] debts. It is holding Michael's business which he fraudulently transferred to Roger, and its progeny responsible for those debts." Despite that affirmation, on May 28, 2015, in an order devoid of factual findings and conclusions of law, the trial

---

[1] Whether the trial court was referring to either of the writ petitioners, "The Stamper Revocable Trust" or "The Roger Stamper Three Daughters Revocable Trust," is not clear.

10

court decided that the Trusts would pay Michaels' debt to Mia and so it directed the master commissioner to sell nine parcels of land owned by the Trusts in Montgomery County.[2] Neither the Trusts nor the Trusts' beneficiaries were ever named as parties or served with process. Although Roger Stamper is the Trustee for both Trusts, he was never named as a party in that capacity, and significantly, was never served with process in any capacity, personally or constructively. The Trusts initiated this case as an original action in the Court of Appeals for immediate relief in the form of a writ of prohibition to enjoin the sale of its property.

Under the well-established writ standards recited in the majority opinion, the writ petitioner must show that the trial court is acting erroneously; that there is no adequate remedy by way of appeal or otherwise; and that great injustice and irreparable injury will ensue if the writ is not issued. The Trusts easily satisfied those requirements.

## II. The Trial Court Acted Erroneously.

The errors in the trial court's orders are fundamental and easy to identify. First, ownership of land is being extinguished by judicial sale even though the legal title holders (The Trusts and their beneficiaries) have never been named as parties or served with process. Second, the trial court

---

[2] Until his retirement at the end of 2014, Judge Stephen Bates presided over the Stamper divorce. Thereafter, Special Judge Linda Bramlage was appointed to preside. The May 28, 2015, order was entered by Judge Bramlage and it recites: "The Court finds that the order from the December 17, 2014 hearing date was not prepared. That order is set out herein as directed by Judge Bates[.]" What follows, with absolutely no factual findings or conclusions of law is an order directing the sale of nine parcels owned by the Trusts.

misconstrued "constructive notice" to be the same as "constructive service."

Third, the imposition of a constructive trust requires *in personam*, not *in rem*, jurisdiction.

**A. The trial court has no authority to transfer title to land by a judicial sale when neither the legal title holder of the land nor its beneficial owners were parties to the action and were never served with process.**

Despite the undisputed fact that the Stamper Revocable Trust and the Roger Stamper Three Daughters Revocable Trust, and their respective beneficiaries, were never made parties to the action and were never brought before the court through constructive or personal service of process, the trial court declared that it had "pierced the veil" of these entities, adjudicated property rights affecting the Trust beneficiaries, and ordered the judicial sale of nine tracts of land held by the Trusts.

In *Gripshover v. Gripshover*, another case in which the use of a family trust was challenged as a fraud on a marital estate, we noted that "Darlene did not join in her action . . . the trustee of the George Gripshover Family Trust, or the beneficiaries of the trust, *all of whom would be necessary parties to an action seeking to avoid . . . the trust.*" 246 S.W.3d 460, 466 (Ky. 2008) (emphasis added.) "Thus, a trustee is a necessary party to any suit or proceeding involving a disposition of trust property or funds[.]" 76 Am. Jur. 2d *Trusts* § 611 (2016). "[I]n actions and proceedings pertaining to trusts and trustees, interested parties who will be materially affected by the order or decree should be made parties." 76 Am. Jur. 2d *Trusts* § 609 (2016). *See also In re Ashton*, 266 S.W.3d 602, 604 (Tex. App. 2008) ("For relief to be ordered

12

against a trust, its trustee must be properly before the trial court as a result of service, acceptance, or waiver of process, or an appearance.").

Ordering the sale of land owned by the Trusts without naming the Trustee and the Beneficiaries as parties and without proper service upon either was clear error.

## B. The trial court erroneously confused "constructive notice" with "constructive service."

The trial court explicitly acknowledged that neither Roger Stamper nor the trucking companies named as respondents in the divorce case were ever served with process *personally or constructively*, in any capacity at all. Rather than service consistent with due process, the trial court based its authority over the property of Roger and the Trusts entirely upon what it called "constructive notice" to Roger — his *subjective awareness* of the pending claim that he had aided his son by fraudulently hiding assets of his son's marital estate. After expressly noting the Black's Law Dictionary definition of "constructive notice" (*not* "constructive service"), the trial court in its "Order Addressing Constructive Trust" of June 16, 2014, justified its authority over the property of Roger Stamper and his affiliated interests as follows:

> As **constructive notice** is adequate to proceed against property *in rem*, the Court finds that it has *in rem* jurisdiction over the property of Roger Stamper and his companies within the Commonwealth and the Court has *quasi in rem* jurisdiction over Roger Stamper and his companies as it relates to that property."

(Emphasis added.)

To support that startling conclusion, the trial court cited *Minary v. Minary*, 395 S.W.2d 588, 589 (Ky. 1965). *Minary*, however, says nothing at all

13

about "constructive notice." *Minary* stands for the rather non-controversial principle that "**constructive service** of the non-resident beneficiary gave the court sufficient jurisdiction of the person to subject the trust res to a claim made against the interest of the non-resident." *Id.* (emphasis added). By misconstruing "constructive *notice*" as the equivalent of "constructive *service*," the trial court erroneously claimed the authority to assert *in rem* jurisdiction over the property of Roger Stamper, Stamper Trucking, and R. Stamper Trucking; and by some further indiscernible mechanism, over the property of the Trusts.

Our precedent is clear that even *actual* notice, much less constructive notice, is a wholly inadequate substitute for proper service of process. "Mere knowledge of the pendency of an action is not sufficient to give the court jurisdiction, and, in the absence of an appearance, there must be service of process.'" *Potter v. Breaks Interstate Park Commission,* 701 S.W.2d 403, 406 (Ky. 1985) (quoting *Rosenberg v. Bricken,* 194 S.W.2d 60, 62 (1946)). Notably, Roger's only appearance was a special appearance on his own behalf objecting to service; the Trusts never made an appearance.

Constructive service required for *in rem* jurisdiction is obtained only upon strict compliance with our warning order attorney rules, CR 4.05, 4.06, and 4.07. "While strict compliance with [the warning order] rules is required . . . actual notice to the defendant is not necessary." *Nolph v. Scott,* 725 S.W.2d 860, 861 (Ky. 1987) (citing *Potter v. Breaks Interstate Park Commission,* 701 S.W.2d 403 (Ky. 1985)).

14

No attempt was made to obtain constructive service over any adverse party by warning order attorney. No attempt was made at all to serve the Trusts and beneficiaries whose property is to be sold. And despite the ease of obtaining personal service over Roger Stamper, a Louisiana resident, under Kentucky's long arm statute, KRS 454.210, there was no attempt to do so. Acting with the complete lack of *in personam* and *in rem* jurisdiction over the persons and property involved in the action is clear error.

## C. The trial court erroneously imposed a constructive trust without *in personam* jurisdiction over the putative trustee.

Even if the trial court had properly concluded that "constructive notice" vested it with *in rem* jurisdiction over all of Roger Stamper's property, the imposition of a constructive trust was plainly erroneous because "[a]n action to create a constructive trust proceeds *in personam*. 76 Am. Jur. 2d *Trusts* § 569 (1975). If a court has jurisdiction over the parties, then it is competent to entertain a suit to establish a trust, although the trust pertains to land in another state." *Kaplon v. Chase*, 690 S.W.2d 761, 763 (Ky. App. 1985) (citation omitted.)[3]

The trial court erred when it imposed a constructive trust without *in personam* jurisdiction over the trustee. Personal service was necessary; constructive service-had it been obtained-would nonetheless have been insufficient, but here the trial court proceeded upon nothing more than "constructive notice."

---

[3] Although *Kaplon* appears to be the last word on the issue by a Kentucky court, its holding is universally supported by numerous decisions of the appellate courts of our sister states.

15

### III. Our clear precedent provides writ relief under these circumstances.

The basic facts material to the writ issue are as follows: Mia Stamper has a judgment against Michael Stamper for $716,491.00 as her share of their marital estate, subject to the outcome of the direct appeal. From all appearances, Roger Stamper was complicit with Michael Stamper in fraudulently concealing or diverting marital assets to defeat Mia's interest in them. Consequently, the trial court allowed Mia to bring third party claims against Roger Stamper and two trucking companies, although none of the third parties were ever served with process, personally or constructively.

To rectify the injustice it perceived, the trial court impressed a constructive trust for the benefit of Mia upon "all" of the property of these three, unserved parties. To liquidate the debt, the trial court ordered the sale of real property; but not the property owned by Michael Stamper, Roger Stamper, and Roger's trucking companies, or any party to the action. The trial court ordered the sale of property owned by Trusts that had not been made parties to the action or served with process. Fortunately, cases like this rarely arise and seldom require our intervention. That being so means there is little precedent to guide our review. However, we have clear precedent that provides clear authority for enjoining a judicial sale of real estate in this situation.

*Robinson v. Carlton*, 96 S.W. 549, 551 (1906), provides that injunctive relief restraining the judicial sale of land is proper:

> where the real estate of the plaintiff is about to be sold in
> satisfaction of a judgment which as to him is void, or under
> execution for debt owing by a third party, to prevent irreparable
> injury to his title, or oppressive litigation growing out of a

multiplicity of suits in which he might be involved with purchasers, in the event such sale were permitted.

The *Robinson* court affirmed that injunctive relief was available without a showing of the inadequacy of other remedies, such as money damages. *Id.*

To the same effect is *Bean v. Everett*, 56 S.W. 403, 405 (Ky. 1900), which holds:

> [T]his is . . . an action by a third party to prevent property claimed by her from being sold to pay the debts of [the judgment debtor] . . . a court of equity, may interfere by injunction, in a case of this character, where the real estate of the plaintiff is about to be sold under executions, as the property of a third person (upon proof that such property is not subject to the judgment upon which the executions issued), to prevent irreparable injury to her title, and a multiplicity of suits, and oppressive litigation in which she might be involved with purchasers if such sales were permitted to be made.

Like the "third part[ies]" referred to in *Robinson* and *Bean*, the Trusts are the legal owners of land that has been attached by the court and subjected to sale to satisfy the debts of a judgment debtor, Michael Stamper. Injunctive relief is available without the need to prove the inadequacies of any other avenue of relief.

### IV. The Supersedeas Bond Affords No Remedy.

Notwithstanding the foregoing authorities and the clear errors of the trial court, all of which compel that writ relief be granted here, I also address the major premise of the majority's analysis. The majority cites the $1,000,000.00 supersedeas bond set by the trial court as "the fly in this ointment" that destroys Roger's claim that he has no adequate remedy by way of appeal. The fly in *that* ointment, however, that neither the Trusts nor the beneficiaries of the Trusts were ever made parties to

17

the underlying action. As non-parties to the action, they have no right to supersede the judgment and no right to file a notice of appeal. Far from providing an adequate remedy, this supersedeas bond affords no remedy at all.

## V. Conclusion

All of the essential elements for writ relief were established by the Trusts. The trial court has clearly acted erroneously by ordering the sale of property owned by the Trusts when neither the Trusts nor their beneficiaries were named as parties; and the Trusts have no appellate remedy, because they were never brought before the court in any way. The Trusts will suffer irreparable harm because a master commissioner's sale will extinguish their ownership of property, destroying in whole or in part the interests of beneficiaries of the Trust who were never accorded even the modicum of fundamental due process. The Court of Appeals abused its discretion by failing to issue the Writ. The Majority compounds the errors by failing to grant relief.

Wright, J., joins.

COUNSEL FOR APPELLANT:

Grover Carrington
Rebecca Dawn Graham
White Peck Carrington, LLP
PO Box 950
Mount Sterling, Kentucky 40353-0950


APPELLEE, HONORABLE LINDA RAE BRAMLAGE:

Family Court Judge
Boone County Judicial Center
6025 Rogers Lane
Burlington, Kentucky  41005-0480


COUNSEL FOR REAL PARTIES IN INTEREST:

Beverly Ruth Storm
Arnzen, Molloy & Storm, PSC
600 Greenup Street
Covington, Kentucky 41011

Joanne Frances Grogan
9824 Orechtel Road
Cincinnati, Ohio 45252